IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Donna Filyaw, | ) | CASE NO.: 4:25-CV-13374-JD |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Protective Life Insurance Company, | ) | **MEMORANDUM OPINION AND** |
| Liberty Life Insurance Company, and | ) | **ORDER** |
| Athene Annuity and Life Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is an insurance coverage dispute. Plaintiff Donna Filyaw filed an Amended Complaint asserting claims for breach of insurance contract and bad faith arising from Defendants' alleged failure to pay an accidental death benefit under a life insurance policy. (DE 8.) Presently before the Court are: (1) Defendants Protective Life Insurance Company and Athene Annuity and Life Company's Motion to Dismiss under Rule 12(b)(1) (DE 11); (2) Athene's Motion to Dismiss Liberty Life Insurance Company (DE 12); and (3) Defendants' Supplemental Motion to Dismiss Plaintiff's Amended Complaint as moot (DE 16). The motions have been fully briefed. (DE 13; DE 14; DE 15; DE 17; DE 18.)

For the reasons below, the Court grants Athene's Motion to Dismiss Liberty Life Insurance Company (DE 12), denies Defendants' Rule 12(b)(1) Motion (DE 11) as moot in light of later developments, and grants in part and denies in part Defendants' Supplemental Motion to Dismiss (DE 16). Plaintiff's breach-of-contract claim is dismissed as moot, but Plaintiff's bad-faith claim remains pending.

1

## I.    BACKGROUND

### A.    Factual Background

Jonathan Filyaw was insured under Policy No. LM8691490, a life insurance policy issued by Athene and administered by Protective. Plaintiff Donna Filyaw was the designated owner and beneficiary of the Policy. According to Defendants' claim records, the Policy provided a $10,000 underlying death benefit and an additional $10,000 accidental death benefit payable upon due proof that the insured's death occurred "as the direct and sole result of accidental bodily injury," provided no policy exclusion applied. (DE 11-2 ¶¶ 2–5.)

Jonathan Filyaw died on April 5, 2025, following an automobile collision in Williamsburg County, South Carolina. (DE 8 ¶ 15.) The death certificate lists the cause of death as "blunt force trauma to the body" sustained in an "automobile accident," and the manner of death as "accident." (DE 11-2 ¶ 9 & Ex. 2; DE 8 ¶¶ 15–23.) Defendants received notice of the claim shortly after the insured's death, requested claim materials in April 2025, and paid the Policy's $10,000 underlying death benefit on May 2, 2025, under Plaintiff's assignment of that benefit to C&J Financial, LLC, for funeral expenses. (DE 11-2 ¶¶ 7–12 & Exs. 1–5.)

This dispute concerns only the Policy's accidental death benefit. Defendants contend that, after receiving the death certificate, they began to investigate whether the accidental death benefit was payable and whether any policy exclusion applied. (DE 11-2 ¶ 13.) On June 18, 2025, Defendants advised Plaintiff that additional information was needed and requested a HIPAA authorization to obtain records for

review. (DE 11-2 ¶ 14 & Ex. 6.) Defendants' submission further reflects repeated attempts during June and July 2025 to contact Plaintiff for a beneficiary interview and to obtain the requested HIPAA authorization, while also seeking the accident report from the South Carolina Highway Patrol. (DE 11-2 ¶¶ 15–25 & Exs. 7–9.)

Defendants also sent status letters on July 29 and August 21, 2025, advising Plaintiff that the accidental death claim remained under review and that additional information from outside sources was still being sought. (DE 11-2 ¶¶ 26, 28 & Exs. 10, 12.) On or about August 1, 2025, Defendants received a preliminary South Carolina Highway Patrol incident report, which Defendants say reflected that the crash and death remained under investigation by the Highway Patrol's Multi-disciplinary Accident Investigation Team and left certain fields incomplete, including whether alcohol or drug tests had been administered. (DE 11-2 ¶ 27 & Ex. 11.) On August 29, 2025, Defendants again wrote Plaintiff requesting the HIPAA authorization and asking that she schedule a time to speak with CoventBridge Group ("CoventBridge").[1] (DE 11-2 ¶ 29 & Ex. 13.)

Defendants received Plaintiff's signed HIPAA authorization on September 17, 2025. (DE 11-2 ¶¶ 30–31 & Ex. 14.) Defendants then requested and received medical records from McLeod Regional Medical Center in October 2025. (DE 11-2 ¶¶ 32–35 & Exs. 15–16.) Defendants assert those records included a notation that EMS reported the insured had been driving approximately 100 miles per hour when he went off the

---

[1]    According to Defendants, CoventBridge is a third party whom they engaged to conduct routine investigations to assist them with obtaining the information necessary to determine whether: (a) the Insured's death occurred "as the direct and sole result of accidental bodily injury," and (b) whether any contractual exclusions apply. (DE 11-2 ¶ 13.)

3

road and the vehicle rolled multiple times. (DE 11-2 ¶ 35.) Based on that information, Defendants sought EMS records from Air Reach and continued to follow up with both Air Reach and the South Carolina Highway Patrol. (DE 11-2 ¶¶ 36–43 & Ex. 17.) Defendants maintain that they have not denied Plaintiff's claim for the accidental death benefit and that the claim investigation remained ongoing when the Amended Complaint was filed. (DE 11-2 ¶¶ 43–44.)

Plaintiff takes the opposite view. In the Amended Complaint, Plaintiff alleges Defendants failed to pay the accidental death benefit despite having sufficient information to do so and contends Defendants' conduct amounts to breach of contract and bad faith. (DE 8 ¶¶ 26–41, 42–60.) In support of that position, Plaintiff submitted an affidavit stating, among other things, that she promptly returned requested claim materials, that Defendants told her they would not pay without proof that Jonathan Filyaw was not intoxicated, and that the claim remained unpaid for months after she submitted the death certificate and other requested information. (DE 8-3.) Plaintiff also submitted an affidavit from Justin Filyaw stating, in substance, that Jonathan Filyaw did not appear intoxicated shortly before the accident. (DE 9 at 2–3.)

**B.      Procedural Background**

Plaintiff filed this action in the Court of Common Pleas for Williamsburg County, South Carolina. Defendants removed the case to this Court on November 12, 2025, invoking diversity jurisdiction under 28 U.S.C. § 1332. (DE 1; DE 1-1.)

After removal, Defendants filed an initial partial motion to dismiss on November 13, 2025, and an amended motion to dismiss on November 19, 2025. (DE

5; DE 6; DE 7.) The same day, Plaintiff filed the Amended Complaint, which asserts claims for breach of insurance contract and bad faith against Protective Life Insurance Company, Liberty Life Insurance Company, and Athene Annuity and Life Company.[2] (DE 8 ¶¶ 42–60.)

On December 1, 2025, Protective and Athene filed the present Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(1), asserting Plaintiff's claims are not ripe because Defendants have not denied the accidental death claim and their investigation remains ongoing. (DE 11; DE 11-1.) That same day, Athene filed a separate Motion to Dismiss Plaintiff's Amended Complaint as against Liberty Life Insurance Company. (DE 12.) Plaintiff filed responses in opposition on December 11 and December 15, 2025, and Defendants filed a reply on December 18, 2025. (DE 13; DE 14; DE 15.)

While Defendants' Rule 12(b)(1) Motion remained pending, Defendants filed a Supplemental Motion to Dismiss Plaintiff's Amended Complaint. (DE 16.) Defendants told the Court that, after receiving the final incident report from the South Carolina Highway Patrol's MAIT Team, they referred the claim to medical review, determined that the insured's death occurred as the direct and sole result of accidental bodily injury, determined that no accidental-death exclusion applied, and approved Plaintiff's claim for the accidental death benefit. Defendants state that, by letter dated April 24, 2026, they paid Plaintiff $10,927.74, consisting of the $10,000 accidental death benefit plus $927.74 in applicable interest. (DE 16; DE 16-1.)

---

[2]    Since Plaintiff has filed an amended complaint (DE 8), Defendants' motions to dismiss (DE 5; DE 6; DE 7) are denied as moot in light of the Plaintiff's Amended Complaint.

Plaintiff filed a response to the Supplemental Motion. (DE 17.) Plaintiff concedes that her breach-of-contract claim seeking payment of the accidental death benefit is now moot. (*Id*. at 4.) Plaintiff opposes dismissal of her bad-faith claim, however, arguing that Defendants' later payment does not extinguish her claim for extra-contractual damages allegedly caused by Defendants' delay and claim handling. Defendants filed a reply, arguing that Plaintiff pleaded a bad-faith refusal-to-pay claim rather than a delay-based claim, and that the later payment moots the entire case. (DE 18.) The motions are ripe for disposition.

## II.     LEGAL STANDARD

### A.     Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a pre-answer motion that raises a "defense to a claim for relief" for "lack of subject-matter jurisdiction[.]" "[A] defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may contend that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). This is a facial challenge. In that circumstance, the Court affords the plaintiff the same procedural protection as under Rule 12(b)(6): it accepts the complaint's well-pleaded factual allegations as true and denies the motion if those allegations are sufficient to invoke subject-matter jurisdiction. *Kerns*, 585 F.3d at 192; *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024) (noting that "the Rule 12(b)(1) and Rule 12(b)(6) analyses are materially identical in this scenario").

Second, a defendant may contend "that the jurisdictional allegations of the complaint were not true." *Adams*, 697 F.2d at 1219. This is a factual challenge. In that circumstance, the Court need not presume the truth of the complaint's jurisdictional allegations, may consider evidence outside the pleadings, and may resolve disputed jurisdictional facts without converting the motion into one for summary judgment. *Adams*, 697 F.2d at 1219; *Kerns*, 585 F.3d at 192; *Evans*, 105 F.4th at 615. If necessary, the Court may conduct an evidentiary hearing to determine whether facts exist to support subject-matter jurisdiction. *Kerns*, 585 F.3d at 192.

When a facial challenge is before the court, Rule 12(b)(6) principles govern. Thus, the Court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court may also consider documents attached to the complaint, as well as documents attached to the motion to dismiss, so long as they are authentic and integral to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). A document is "integral to the complaint" when "the complaint relies heavily upon its terms and effect." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

There is, however, an important limitation on the Court's authority to resolve disputed facts under Rule 12(b)(1). Where the jurisdictional facts are inextricably intertwined with the facts central to the merits of the dispute, the Court should not resolve those factual disputes under the ordinary Rule 12(b)(1) framework. *Kerns*, 585 F.3d at 193–96. In that circumstance, the defendant's motion challenges not only

7

jurisdiction, but also the existence of the plaintiff's cause of action. *Id*. at 193. The Court should therefore ordinarily assume jurisdiction and proceed to the intertwined merits issues only after affording the plaintiff the procedural safeguards applicable to a direct merits challenge, including appropriate discovery where necessary. *Id*. at 193–96. Dismissal under Rule 12(b)(1) in such circumstances is appropriate only where the jurisdictional allegations are clearly immaterial, made solely for the purpose of obtaining jurisdiction, or wholly unsubstantial and frivolous. *Id*. at 193–94 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

### B.     Mootness

Article III limits federal courts to adjudicating actual cases and controversies. U.S. Const. art. III, § 2. Mootness is part of that limitation and requires dismissal when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)). Put differently, "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Id*. (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)).

A case may become moot because of "a change in factual circumstances" or a change in law. *Id*. "Generally speaking, one such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Id*. (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). When intervening events provide the plaintiff the precise relief sought, and no decision by

the court would have any practical effect in the real world, the claim is moot. *Eden, LLC v. Justice*, 36 F.4th 166, 170 (4th Cir. 2022); *see also Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010).

The inquiry, however, is claim- and relief-specific. A claim is moot only when the Court can no longer grant any effective relief as to that claim. Thus, payment or satisfaction of one form of requested relief may moot a claim seeking only that relief, but it does not necessarily moot a separate claim if a favorable decision could still afford legally cognizable relief. *See Simmons*, 634 F.3d at 763; *Eden*, 36 F.4th at 170.

### III.    DISCUSSION

**A.    Athene's Motion to Dismiss Liberty Life Insurance Company**

Athene moves to dismiss Plaintiff's Amended Complaint as against Liberty Life Insurance Company, arguing that Liberty Life merged into Athene before this action was filed and therefore lacks a separate legal existence capable of being sued or served. (DE 12; DE 12-1.) Plaintiff does not dispute Athene's representation that Liberty Life merged into Athene and agrees that Liberty Life should be dismissed from the case. (DE 14.)

On this record, dismissal of Liberty Life Insurance Company is appropriate. Because Plaintiff does not oppose dismissal and the record reflects that Liberty Life no longer exists as a separate legal entity, Athene's Motion to Dismiss Liberty Life Insurance Company (DE 12) is granted, and Liberty Life Insurance Company is dismissed from this action with prejudice.

**B.    Protective and Athene's Rule 12(b)(1) Motion**

### 1.    The Motion Presents a Factual Rule 12(b)(1) Challenge.

Protective and Athene move to dismiss the Amended Complaint under Rule 12(b)(1), arguing Plaintiff's claims are not ripe because Defendants have not denied Plaintiff's claim for accidental death benefits and their investigation remains ongoing. (DE 11; DE 11-1.) Defendants style their motion as a factual challenge to subject-matter jurisdiction and rely on the McCabe declaration and related claim materials to show that no claim denial has been issued and that key records remained outstanding when suit was filed. (DE 11-1; DE 11-2.)

The Court agrees that ripeness is a justiciability doctrine derived from Article III and that, in the ordinary case, a court assessing ripeness asks whether the issues are fit for judicial decision and whether withholding review would impose hardship on the parties. *See Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018). Likewise, the Fourth Circuit has recently reiterated that "standing involves the question of who may sue, ripeness involves when they may sue," and that a claim is unripe where the plaintiff has not yet suffered injury and any future impact remains wholly speculative. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 99–100 (4th Cir. 2026).

But that does not end the inquiry here. Under Fourth Circuit precedent, even when a defendant raises a factual challenge under Rule 12(b)(1), the Court may not resolve disputed jurisdictional facts in the ordinary manner where those facts are "inextricably intertwined" with facts central to the merits of the dispute. *Kerns v. United States*, 585 F.3d 187, 193–96 (4th Cir. 2009); *see also United States ex rel.*

10

*Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). In that circumstance, the defendant's motion challenges not only the Court's jurisdiction, but also the existence of the plaintiff's cause of action, and the Court should ordinarily assume jurisdiction and proceed with the procedural protections applicable to a direct merits challenge. *Kerns*, 585 F.3d at 193–96. Dismissal under Rule 12(b)(1) remains appropriate only where the jurisdictional allegations are clearly immaterial, made solely to obtain jurisdiction, or wholly unsubstantial and frivolous. *See Bell v. Hood*, 327 U.S. 678, 682 (1946); *Kerns*, 585 F.3d at 193–94.

In *Evans v. United States*, the Fourth Circuit reaffirmed that dismissal under Rule 12(b)(1) is procedurally improper where the jurisdictional question and the merits are inextricably intertwined, even if the case may later fail on another ground. 105 F.4th 606, 614–19 (4th Cir. 2024). *Evans* thus confirms that the Court must separate whether Defendants may ultimately prevail from the antecedent question whether the disputed facts on which Defendants rely may properly be resolved under Rule 12(b)(1) at this stage.

> **2.    The Jurisdictional Dispute Is Inextricably Intertwined with the Merits.**

Here, the factual disputes identified by the parties are intertwined with the merits of Plaintiff's breach-of-contract and bad-faith claims. Defendants contend their claim investigation remained active and incomplete when suit was filed because, among other things, the South Carolina Highway Patrol's investigation was still pending, the final incident report had not been issued, EMS records from Air Reach had not been received, and Plaintiff did not provide the requested HIPAA

authorization until September 2025. (DE 11-2 ¶¶ 27, 29–31, 35–43.) Plaintiff, by contrast, alleges Defendants already had sufficient information to decide the claim, that she promptly returned requested materials, that Defendants told her they would not pay without proof that Jonathan Filyaw was not intoxicated, and that the claim remained unpaid for months despite the death certificate and other information she provided. (DE 8 ¶¶ 26–41; DE 8-3.)

Those disputes are not merely collateral to jurisdiction. Whether Defendants had sufficient information to decide the claim, whether the delay in reaching a decision was attributable to Plaintiff, outside sources, or Defendants, and whether Defendants' conduct amounted to a legitimate ongoing investigation or an effective refusal to pay are all facts that bear directly on Plaintiff's theories of breach and bad faith. Put differently, Defendants' ripeness argument depends on accepting their view that the claim remained under reasonable and necessary investigation, while Plaintiff's merits theories depend in part on the opposite characterization—that Defendants had enough information, insisted on proof they knew may not exist, and functionally refused to pay. The Court cannot resolve that factual dispute as a pure jurisdictional matter without substantially reaching the merits. *See Kerns*, 585 F.3d at 193–96; *Evans*, 105 F.4th at 614–19.

Defendants emphasize that no formal denial letter was issued before Plaintiff filed suit. That point is relevant, but it is not dispositive at this stage.[3] The absence

---

[3]    Defendants are correct that some of Plaintiff's cited materials would not, standing alone, compel the conclusion that the accidental death benefit was payable. For example, courts have recognized that a death certificate's designation of death as "accident" is not necessarily determinative under an accidental-death policy. *See Thomas v. Reliance*

of a formal denial does not eliminate the overlap between the jurisdictional issue and the merits, where Plaintiff's theory is that Defendants' course of conduct itself amounted to a wrongful failure to decide and pay the claim. Nor does the Court hold that Plaintiff has established a constructive denial, breach, or bad faith. The Court holds only that the parties' dispute over the meaning of Defendants' conduct cannot be resolved on this Rule 12(b)(1) record without adjudicating facts central to the merits.

### 3.    Dismissal Under Rule 12(b)(1) Is Not Appropriate on the Present Record.

Defendants cite several nonbinding cases for the proposition that a first-party insurance claim is unripe where the insurer has not denied the claim and its investigation remains ongoing. *See, e.g.*, *Banks v. Nationwide Prop. & Cas. Ins. Co.*, No. 2:18-cv-00259, 2018 WL 3543081, at *3 (S.D.W. Va. July 23, 2018); *Blevins v. Nationwide Gen. Ins. Co.*, No. 2:17-cv-03692, 2017 WL 6626330, at *3–4 (S.D.W. Va. Dec. 28, 2017); *The Jacqueline Norris Huggett v. Ironshore Specialty Ins. Co.*, No. 18-21467-CIV, 2018 WL 8359643, at *3–4 (S.D. Fla. July 18, 2018); *Peer v. Liberty Life Assurance Co. of Bos.*, 758 F. App'x 882, 884–85 (11th Cir. 2019). In fact, *Blevins* itself distinguished between an unripe breach claim and a narrower bad-faith-delay theory

---

*Standard Life Ins. Co.*, 487 F. Supp. 2d 697, 702 n.3 (D.S.C. 2007). And South Carolina bad-faith law ordinarily asks whether the insurer refused benefits without a reasonable basis for contesting the claim. *See Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359–60, 415 S.E.2d 393, 396–97 (1992); *see also Temple v. Mut. of Omaha Ins. Co.*, No. 4:11-cv-00128-RBH, 2013 WL 314750, at *4–5 (D.S.C. Jan. 28, 2013). But the Court does not decide those merits questions here. The point here is that the parties' dispute over what information Defendants reasonably needed, whether Defendants acted diligently, and whether their conduct amounted to a permissible investigation or an effective refusal to pay cannot be resolved under Rule 12(b)(1) on this record.

under West Virginia law. Those authorities do not alter the result here. At most, they reflect that, in some contexts, the absence of a denial and the existence of an ongoing investigation may bear on ripeness. They do not address the distinct question presented here—whether the Court may resolve Defendants' fact-dependent ripeness theory under Rule 12(b)(1) where the disputed facts are inextricably intertwined with the merits of Plaintiff's breach-of-contract and bad-faith claims. Under *Kerns* and *Evans*, it may not.

It may well be that, on a fuller record, Defendants can show that the claim was not fit for judicial decision because the relevant investigation was still ongoing and the dispute depended on contingent future events. *See Deal*, 911 F.3d at 191; *Nat'l Ass'n of Diversity Officers*, 167 F.4th at 99–100. But under *Kerns* and *Evans*, the Court cannot decide that point now by resolving factual disputes that are much like those that will determine whether Defendants breached the Policy or acted in bad faith.

Accordingly, the Court declines to resolve the parties' competing factual accounts under the ordinary Rule 12(b)(1) framework. Because the jurisdictional facts on which Defendants rely are intertwined with facts central to the merits, dismissal under Rule 12(b)(1) is not appropriate on the original record presented by DE 11. *See Kerns*, 585 F.3d at 195–96; *Evans*, 105 F.4th at 618–19.

Later developments, however, have overtaken the original ripeness posture. Defendants have since completed their investigation, approved Plaintiff's claim for the accidental death benefit, and paid Plaintiff $10,927.74, consisting of the $10,000

14

accidental death benefit plus $927.74 in applicable interest. (DE 16; DE 16-1.) Accordingly, Defendants' Rule 12(b)(1) Motion (DE 11), which was premised on the then-ongoing nature of the claim investigation and the absence of a claim decision, is denied as moot in light of Defendants' Supplemental Motion to Dismiss. To the extent Defendants contend Plaintiff's remaining bad-faith claim fails because Defendants acted reasonably, because there was no refusal to pay, or because Plaintiff has not adequately pleaded a delay-based theory, those arguments go to the sufficiency or merits of Count II and may be raised, if appropriate, through a proper Rule 12(c) or Rule 56 motion.

To be clear, the Court does not decide at this stage whether Plaintiff will ultimately prevail on her bad-faith claim, whether Defendants' investigation was reasonable, whether Defendants' conduct amounted to a constructive denial of the accidental death claim, or whether Plaintiff has adequately pleaded every theory she now advances. The Court holds only that the original ripeness motion cannot support dismissal under Rule 12(b)(1), and that DE 11 has been superseded by Defendants' later payment and the mootness arguments raised in DE 16.

## C.    Defendants' Supplemental Motion to Dismiss as Moot

Defendants next argue that their April 24, 2026, payment of the accidental death benefit plus interest moots the Amended Complaint in its entirety. (DE 16.) The Court agrees in part.

As an initial matter, Count I is moot. Plaintiff's breach-of-contract claim sought payment of the accidental death benefit allegedly due under the Policy. Defendants

have now paid that benefit with interest, and Plaintiff expressly concedes that her breach-of-contract claim is moot. (DE 17.) Accordingly, Count I is dismissed without prejudice for lack of subject-matter jurisdiction.

The closer question is whether Defendants' later payment also moots Count II, Plaintiff's bad-faith claim. Defendants contend it does because Plaintiff pleaded bad-faith refusal to pay, Defendants never formally denied the claim, and payment of the accidental death benefit has now provided Plaintiff with the relief she sought. Defendants rely on general mootness principles holding that a claim becomes moot when intervening events give the plaintiff the relief requested and leave the Court unable to grant effective relief. *See*, e.g., *Eden, LLC v. Justice*, 36 F.4th 166, 170 (4th Cir. 2022); *Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 763 (4th Cir. 2011). Defendants also cite insurance-benefit cases holding, in various procedural settings, that payment of all benefits or all recoverable policy proceeds may eliminate a live controversy where the plaintiff seeks no remaining legally cognizable relief. *See*, e.g., *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019); *Thomas v. USPS*, No. 8:24-cv-2937-KKM-LSG, 2025 WL 1827286, at *1–3 (M.D. Fla. July 2, 2025); *Kane v. U-Haul Int'l Inc.*, 218 F. App'x 163, 168–69 (3d Cir. 2007).

Those authorities support dismissal of Count I, but they do not compel dismissal of Count II as moot. Count II does not seek only the $10,000 accidental death benefit. Plaintiff also seeks extra-contractual damages, including mental-anguish damages and, if otherwise available, punitive damages, based on Defendants'

16

alleged bad-faith handling of the claim. Defendants have not paid those alleged damages. Thus, even after payment of the policy benefit, a favorable decision on Count II could have a practical effect if Plaintiff can establish that Defendants' claim handling caused compensable extra-contractual injury. That is enough to defeat Defendants' Article III mootness argument at this stage.

Defendants' reliance on cases involving payment of the full contractual benefit is therefore only partially persuasive. *Thomas* involved an insurance claim in which the plaintiff accepted and deposited payment for the full amount available under the policy, and the court separately rejected his attempt to recover litigation costs. *Kane* likewise involved a policy-limit payment, in which the plaintiff agreed that the offered amount was the full amount recoverable. *A&M Gerber* is also distinguishable because it addressed Article III standing in a no-fault insurance declaratory-judgment action in which the operative complaint sought no money damages, and the insurer had paid more benefits than were owed before suit. Those cases do not address the distinct situation presented here, where the insured concedes that the contractual-benefit claim is moot but continues to seek separate damages for alleged bad-faith claim handling.

Defendants also cite *Bristol Springs Custom Homes, LLC v. Argo Group, Inc.*, No. 3:23-CV-246, 2024 WL 5453237, at *2–3 (N.D.W. Va. Dec. 19, 2024), for the proposition that a bad-faith claim cannot stand once the breach-of-contract claim is moot. (DE 16-1 at 19–20.) That case is not controlling and arose under a different state's law. More importantly, it is better understood as addressing whether the

plaintiff had a viable bad-faith theory after the contract claim was dismissed, not whether Article III automatically deprives the Court of jurisdiction over any bad-faith claim whenever the insurer later pays the contractual benefit. Whether South Carolina law permits Plaintiff's bad-faith claim to proceed on the facts alleged here is a merits question; it is not the same question as whether Defendants' payment eliminated every live controversy in the case.

South Carolina law informs, but does not collapse, the distinction between mootness and merits. The elements of a claim for bad-faith refusal to pay first-party benefits include: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359–60, 415 S.E.2d 393, 396–97 (1992). Federal courts applying South Carolina law have also recognized that an insurer is entitled to a reasonable time to investigate a claim and that the relevant merits question may include whether the insurer had reasonable grounds to contest or delay payment. *See Temple v. Mut. of Omaha Ins. Co.*, No. 4:11-cv-00128-RBH, 2013 WL 314750, at *4–5 (D.S.C. Jan. 28, 2013); *Columbia Ins. Co. v. Reynolds*, 438 F. Supp. 3d 614, 621 (D.S.C. 2020).

Those principles may ultimately present a substantial merits obstacle for Plaintiff. Defendants argue that Plaintiff pleaded a bad-faith refusal to pay, not a delay-based bad-faith claim; that the word "delay" does not appear in the Amended

18

Complaint; that Defendants never denied the accidental-death claim; and that *Temple* declined to recognize liability on a closely relevant delayed-payment theory where the insurer had paid the claim and had not denied coverage. Those arguments may have force. But they go to whether Count II is adequately pleaded or legally viable under South Carolina law, not whether the later payment of the policy benefit has mooted the claim for Article III purposes.

Nor does the Court read Plaintiff's cited authorities as establishing that every delayed insurance payment automatically supports a bad-faith claim. *Nichols*, *Tadlock Painting*, and *Mixson* involved insurer conduct that included a denial, refusal, or withholding of benefits in materially different circumstances. *See Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983); *Tadlock Painting Co. v. Md. Cas. Co.*, 322 S.C. 498, 473 S.E.2d 52 (1996); *Mixson, Inc. v. Am. Loyalty Ins. Co.*, 349 S.C. 394, 562 S.E.2d 659 (Ct. App. 2002). *RFT Management* did not involve an insurance bad-faith claim. *See RFT Mgmt. Co. v. Tinsley & Adams, L.L.P.*, 732 S.E.2d 166, 173 (S.C. Ct. App. 2012). And *Temple* is a meaningful caution against treating delayed payment alone as sufficient to prove bad faith under South Carolina law. But the limited question presented by Defendants' Supplemental Motion is *mootness*. On that question, Plaintiff continues to seek relief that Defendants have not provided, and Defendants have not shown that the later payment of the policy benefit makes it impossible for the Court to grant any effective relief on Count II.

Accordingly, DE 16 is granted as to Count I and denied as to Count II. This ruling is without prejudice to Defendants' ability to challenge Count II through an appropriate Rule 12(c) or Rule 56 motion, including on the grounds that the Amended Complaint does not adequately plead an unreasonable-delay theory, that South Carolina law requires a refusal to pay benefits due, that Defendants had a reasonable basis for continuing their investigation, or that Plaintiff cannot establish damages caused by bad-faith conduct.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' earlier motions to dismiss (DE 5; DE 6; DE 7) are denied as moot in light of Plaintiff's Amended Complaint. Defendants' Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(1) (DE 11) is denied as moot in light of later developments and the filing of Defendants' Supplemental Motion. Athene's Motion to Dismiss Liberty Life Insurance Company (DE 12) is granted, and Liberty Life Insurance Company is dismissed from this action with prejudice as a separately named defendant. Defendants' Supplemental Motion to Dismiss Plaintiff's Amended Complaint (DE 16) is granted in part and denied in part. Count I for breach of contract is dismissed without prejudice as moot. Count II for bad faith remains pending against Protective Life Insurance Company and Athene Annuity and Life Company.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
June 10, 2026

21